UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

COURTNEY SANDERS,

                                    Plaintiff,

                                                            6:19-CV-00029
                    v.                                      (MAD/TWD)

FOCUS REHAB NURSING,

                                    Defendant.
_____

APPEARANCES:

COURTNEY SANDERS
Plaintiff pro se
4 Newell Street. Apt. 1
Utica, New York 13502

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

### ORDER AND REPORT-RECOMMENDATION

The Clerk has sent the complaint of *pro se* Plaintiff Courtney Sanders against her former

employer, Defendant Focus Rehab Nursing ("Focus Rehab"), to the Court for initial review.

(Dkt. No. 1.)  The complaint is on a federal court form labeled civil rights complaint pursuant to

42 U.S.C. § 1983.  *Id.*  Also before the Court is Plaintiff's application to proceed *in forma*

*pauperis* ("IFP application").  (Dkt. No. 2.)

I.       **IFP APPLICATION**

A court may grant *in forma pauperis* status if a party "is unable to pay" the standard fee

for commencing an action.  28 U.S.C. § 1915(a)(1).  After reviewing Plaintiff's IP application,

the Court finds that she meets this standard.  Therefore, Plaintiff's IFP application (Dkt. No. 2) is

granted.

## II.    LEGAL STANDARDS FOR INITIAL REVIEW

Even when a plaintiff meets the financial criteria for *in forma pauperis*, 28 U.S.C.

§ 1915(e) directs that when a plaintiff proceeds *in forma pauperis*, "the court shall dismiss the

case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii)

fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a

defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must look to see whether the

complaint lacks an arguable basis either in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319, 325

(1989).  "An action is frivolous when either: (1) the factual contentions are clearly baseless such

as when the claims are the product of delusion or fantasy; or (2) the claim is based on an

indisputably meritless legal theory."  *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437

(2d Cir. 1998) (citations and internal quotation marks omitted).  Although extreme caution

should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse

party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin*,

700 F.2d 37, 41 (2d Cir. 1983), the court still has a responsibility to determine that a claim is not

frivolous before permitting a plaintiff to proceed.  *See, e.g., Thomas v. Scully*, 943 F.2d 259, 260

(2d Cir. 1991) (per curiam) (holding that a district court has the power to dismiss a complaint *sua

sponte* if the complaint is frivolous).

To survive dismissal for failure to state a claim, a complaint must plead enough facts to

state a claim that is "plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-harmed-me accusation." *Id*. In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

Where a plaintiff proceeds *pro se*, the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citation omitted). A *pro se* complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## III.   COMPLAINT

Plaintiff  alleges that on March 31, 2017, at the end of her shift as a certified nurse's aide, she was notified by her former employer, Defendant Focus Rehab, that she had been accused of

resident abuse. (Dkt. No. 1 at 2.[1]) Plaintiff received a phone call from Defendant at 3:30pm

informing her she had been put on suspension until an investigation of the alleged abuse had

been completed. *Id*. Plaintiff claims that Focus Rehab attempted to convince her to resign her

position at the facility during her suspension. *Id*. Plaintiff alleges that because she refused to

resign, Focus Rehab was required to continue to pay her lost wages during the suspension under

the 1199 SEIU union contract. *Id*. at 2-3.

Plaintiff also alleges that Focus Rehab attempted to settle with her for $3,000.00 and her

resignation while the investigation was ongoing, and she declined because she believed the

monetary offer to be unfair. *Id*. at 3. On June 9, 2017, while the investigation remained ongoing,

Plaintiff was informed by her employer that her last day of work was March 31, 2017, the date on

which she had been told of the abuse claim and placed on suspension. *Id*. Plaintiff asked the

New York State Attorney General's Office and the New York State Department of Health for an

update on the investigation on August 30, 2017, and was told it was ongoing. *Id*. at 3.

According to Plaintiff, she discussed the situation with her union representative, filed a

grievance, and made a complaint to the New York State Human Rights Division ("NYSHRD").

There are no allegations in the complaint regarding the details, status, or outcome of Plaintiff's

grievance and NYSHRD complaint, and Plaintiff has failed to identify specific legal claims she

is asserting against Defendant or identify the relief she is seeking against the Defendant. *Id*. at 4-

5.

---

[1] Page references to documents identified by docket number are to the numbers assigned
by the CM/ECF docketing system maintained by the Clerk's Office.

## IV.  ANALYSIS

### A.  Civil Rights Claim under 42 U.S.C. § 1983

Because Plaintiff utilized a form for a civil rights complaint pursuant to 42 U.S.C. § 1983 the Court has considered whether she has alleged facts in her complaint plausibly stating a claim under § 1983.

To state a claim under § 1983, a plaintiff must allege that a defendant violated the plaintiff's federal constitutional or statutory rights while acting under color of state law. *Washington v. County of Rockland*, 373 F.3d 310, 315 (2d Cir. 2004).  "[P]rivate conduct, no matter how discriminatory or wrongful, is not controlled by § 1983."  *Am. Mfrs. Mut, Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999).  A private actor can be found to act under color of state law for purposes of § 1983 when "(1) the State compelled the conduct, (2) there is a sufficiently close nexus between the State and the private conduct, or (3) the private conduct consisted of activity that has traditionally been the exclusive prerogative of the State."  *Hogan v. A.O. Fox Memorial Hosp.*, 346 F. App'x 627, 628 (2d Cir. 2009) (citing *Sybalski v. Indep. Group Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008).  "The fundamental question under each test is whether the private [actor's] challenged actions are 'fairly attributable' to the state."  *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012) (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982).

The pivotal issue with regard to Plaintiff's § 1983 claims against Focus Rehab is whether the Defendant was a state actor in connection with Plaintiff's allegations against it.  Plaintiff's complaint is devoid of allegations suggesting Focus Rehab was a state actor for purposes of her

complaint.[2]  Furthermore, even if Focus Rehab were a state actor for purposes of this case,

Plaintiff's complaint contains no factual allegations plausibly showing that Focus Rehab violated

any of Plaintiff's federal constitutional or statutory rights in the actions taken by it with regard to

her employment.  Therefore, Plaintiff cannot be found to have stated a claim under § 1983.

### B.      Employment Discrimination

Because Plaintiff's complaint involves termination of her employment, and she has

alleged filing a complaint with the NYSHRD, the Court has also considered whether Plaintiff has

stated a claim for employment discrimination under federal law.

Plaintiff has alleged no facts regarding the nature or status of NYSHRD claim.  She has

not alleged any facts plausibly showing the termination of her employment involved

discrimination on the basis of "race, color, religion, sex, or national origin . . ." under Title VII of

the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(a) ("Title VII").  Nor has

Plaintiff alleged any facts plausibly showing or employment discrimination based on disability in

violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12112 to 12117, or age

under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 623.[3]  Rather,

---

[2]  Focus Rehab is identified at https:healthcarecomps.com/nursing-homes/ny/335794/ as a "For profit – Individual, Medicare Certified, nursing home operating with 118 residents and 120 certified beds. It's legal business name (LBN) is UCRN LLC."  *See also* https:opengovus/npi/ 105384001.  Focus Rehab was taken over by Centers Health Care in January of 2018.  *See* https:/ centershealthcare.com/news/entry/center-health-care-welcomes-oneida-center-to-the-family.html. (sites last visited on January 14, 2019).

[3]  The Court notes that administrative exhaustion with the Equal Employment Opportunity Commission is an essential element of Title VII, ADA, and ADEA employment discrimination claims and, as such, is a precondition to bringing employment claims in federal court.  *See Tanvir v. N.Y.C. Health & Hosps. Corp.*, 480 F. App'x 620, 621 (internal quotation marks and citation omitted); *Concepcion v. Continuum of Care*, No. 3:17-CV-1854 (VLB), 2018 WL 6529178, at *6 (D. Conn. Dec. 12, 2018); *Crosby v. McDonald's of Guilderland, LLC*, No.

Plaintiff has alleged only that her suspension and subsequent discharge resulted from a complaint of patient abuse made against her. (Dkt. No. 1 at 2.)

Based upon the foregoing, Plaintiff cannot be found to have stated a claim for employment discrimination under Title VII or the ADA.

## V.    CONCLUSION

The Court finds that Plaintiff's complaint fails to state a claim.[4] However, cognizant of the special latitude to be given to *pro se* litigants, the Court recommends that Plaintiff be given an opportunity to amend her complaint. *See Webb v. Bermudez*, No. 92 Civ. 7305 LAKRLE, 1996 WL 599673, at *1 (S.D.N.Y. Oct. 17, 1996)[5] (citing *Salahudin v. Harris*, 782 F.2d 1127, 1132 (2d Cir. 1986) for the proposition that "dismissal against pro se litigants should be granted only then they deliberately frustrate the process, not when they do so through a misunderstanding.").

Therefore, the Court recommends that Plaintiff be allowed thirty (30) days from the filing of the District Court Order on this Report-Recommendation to submit an amended complaint for

---

1:17-CV-1160 (MAD/DEP), 2018 WL 2077884, at *3 (N.D.N.Y. May 2, 2018) (the ADA incorporates the administrative exhaustion requirements of Title VII). Administrative exhaustion is not, however, a jurisdictional requirement; rather a precondition of suit subject to equitable defenses such as waiver. *See Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 384 (2d Cir. 2015).

[4] The Court cannot ascertain from the sparse allegations in the complaint whether Plaintiff may have legally cognizable claims for breach of employment contract claim against Defendant or under the union contract referenced in the complaint or, if so, there would be federal jurisdiction over those claims.

[5] Copies of all unpublished decisions cited herein will be provided to Plaintiff in accordance with *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

initial review by the Court, and that in the event the Plaintiff fails to do so, the action be

dismissed with prejudice at the end of the thirty (30) day period.  Any amended complaint must

be a complete pleading that supercedes the original complaint in all respects and does not

incorporate by reference any portion of the original complaint.

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's IFP Application (Dkt. No. 2) is **GRANTED**;

**RECOMMENDED** that Plaintiff be granted thirty (30) days from the date of the District

Court's Order on this Report-Recommendation to submit an amended complaint for initial

review by this Court; and it is further

**RECOMMENDED** that if Plaintiff fails to submit an amended complaint for review as

of the expiration of the thirty (30) days granted her to do so, her complaint (Dkt. No. 1) be

**DISMISSED WITH PREJUDICE** on initial review under 28 U.S.C. § 1915(e); and it is hereby

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-

Recommendation, along with copies of the unpublished decisions cited herein in accordance with

the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (*per curiam*).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file

written objections to the foregoing report.[6]  Such objections shall be filed with the Clerk of the

Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL**

---

[6] If you are proceeding pro se and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. 6(a)(1)(C).

**PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 72.


Dated: January 14, 2019
      Syracuse, New York

Therese Wiley Dancks
United States Magistrate Judge

2018 WL 6529178
United States District Court, D. Connecticut.

Vivian CONCEPCION, Plaintiff,
v.
CONTINUUM OF CARE, Defendant.

No. 3:17-CV-1854 (VLB)
|
Signed 12/12/2018

**Attorneys and Law Firms**

Vivian Concepcion, Cheshire, CT, pro se.

[Sally Welch St. Onge](), [Tanya Ann Bovee](), Jackson Lewis
—P.C., Hartford, CT, for Defendant.

MEMORANDUM OF DECISION ON
DEFENDANT'S MOTION TO DISMISS [DKT. 27]

Hon. [Vanessa L. Bryant](), United States District Judge

 **\*1** On November 3, 2017, Plaintiff Vivian Concepcion
("Plaintiff") filed the instant employment discrimination
action *pro se* against her former employer Defendant
Continuum of Care ("Defendant"). Dkt. 1. On June 29,
2018, Defendant moved to dismiss. Dkt. 27. The Court
granted Plaintiff's motion for an extension of time to
respond to the motion to dismiss. Dkt. 35. Plaintiff's
deadline to oppose the motion to dismiss was August 20,
2018. Plaintiff failed to file a response. On October 26,
2018, the Court ordered Plaintiff to file a response to
the motion to dismiss and notified her that if she failed
to do so her complaint would be dismissed. [1] Dkt. 42.
On November 5, 2018, the Court granted the motion to
dismiss. Dkt. 44. For the following additional reasons,
Defendant's motion to dismiss is GRANTED.

I. <u>Background</u>
In her form complaint, Plaintiff states that her action
is brought pursuant to Title VII of the Civil Rights
Act of 1964, the Rehabilitation Act, and the Americans
with Disabilities Act ("ADA"). Dkt. 1. She alleges
that Defendant's conduct was based on her race,
sex, and national origin. She also claims she was
discriminated against on the basis of her anxiety disability,

race, and age for promotion. However, when asked
in the form complaint to describe facts surrounding
her discrimination claim, Plaintiff only states that her
supervisor told her that they "were going to have a
supervision" and Plaintiff responded that she "did not
want to participate in a supervision" because she "did not
feel well at the time." *Id.* Next, she claims her supervisor
followed her around the client's home, stated repeatedly
that they needed to do the supervision, and got into
Plaintiff's "personal space." *Id.* Plaintiff previously filed
charges with the CHRO. She did not attach a Notice of
Right to Sue letter. She seeks reinstatement and $120,000.
*Id.*

Plaintiff attached a seven-page letter to her form
complaint which is dated July 12, 2015 and addressed to
the CHRO. [2] It is unsigned and there is no indication
that it was ever received by the CHRO. Plaintiff does not
expressly incorporate the letter into the form complaint.
In response to the form complaint's request that Plaintiff
explain why she disputes the CHRO's decision that there
was no probable cause to believe discrimination occurred,
she states "because of my complaint of discrimination
with CHRO papers attach [*sic*]." *Id.* The letter states
that it is her response to Defendant's answer before
the CHRO. *Id.* Plaintiff discusses her job performance
and complaints of discrimination, including Family
and Medical Leave Act ("FMLA") interference and
retaliation, failure to accommodate and retaliation under
the ADA and race discrimination. *Id.* She claims *inter alia*
that Defendant harassed her and discriminated against her
after she disclosed an anxiety disorder and requested an
accommodation. *Id.* Plaintiff alleges that she had anxiety,
specifically that she "did not feel comfortable going down
into the basement alone, especially during [her] night
shifts." *Id.* Plaintiff acknowledges that it was every staff
person's responsibility to do laundry on his or her shift
and the laundry was located in the basement. *Id.* She
alleges she requested an accommodation and provided
Defendant with a medical note. Ultimately, she alleges
that Defendant placed her on a final written warning for
failure to do the laundry. Plaintiff was terminated on July
18, 2015. Plaintiff makes no specific factual allegations
regarding her termination in the form complaint or the
letter attached to it.

 **\*2** Defendant moves to dismiss the complaint on the
grounds that Plaintiff failed to properly plead exhaustion
and failed to exhaust her claims of race, sex, national

origin, age and any claim related to promotion. *See* Dkt. 28. Defendant also argues that Plaintiff's disability discrimination claims fail to state a claim for relief. *Id.* In support of its motion to dismiss, Defendant attaches several exhibits, including Plaintiff's original complaint before the CHRO dated May 11, 2015 and Plaintiff's amended complaint dated March 10, 2016. *Id.* at Exs. 2, 4.

## II. Consideration of Materials Outside the Complaint

As explained above, both parties have attached additional materials to their pleadings. Plaintiff attached a letter addressed to the CHRO to her form complaint. Defendant attached several exhibits to its motion to dismiss: (1) Plaintiff's CHRO complaint dated May 11, 2015, (2) EEOC notice of charge dated August 5, 2015, (3) Plaintiff's amended CHRO complaint dated March 10, 2016, and (4) notice of final agency action dated May 11, 2017. *Id.* at Exs. 1-4.

On a motion to dismiss, the Court is permitted to consider (1) documents attached to the complaint as an exhibit or incorporated by reference, (2) matters of which judicial notice may be taken, and (3) documents either in plaintiff's possession or of which plaintiff had knowledge and relied on in filing the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *see also Mancuso v. Dunbar*, No. 3:08-CV-1018 (VLB), 2010 WL 466004, at *4 n.3 (D. Conn. Feb. 5, 2010) ("The Court may take judicial notice of documentation from administrative proceedings without converting the current motion into a motion for summary judgment."). Here, the Court will consider the documents submitted by both parties. Plaintiff filed her letter to the CHRO along with her form complaint. She does not expressly incorporate the letter into her complaint, but she references it. The Court finds that this is sufficient given Plaintiff's *pro se* status. The Court will also take judicial notice of the underlying CHRO complaints submitted by Defendant as exhibits to its motion to dismiss.

## III. Defendant's Motion to Dismiss for Failure to State a Claim

Plaintiff alleges disability discrimination and retaliation, FMLA interference and retaliation, and discrimination based on race, sex, age and national origin. Defendant moves to dismiss the complaint on the grounds that Plaintiff failed to properly allege exhaustion and failed to exhaust her claims of race, sex, national origin, age and

any claim relation to promotion. *See* Dkt. 28. Defendant also argues that Plaintiff's disability discrimination claims fail to state a claim for relief. *Id.*

### A. Legal Standard

" 'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.' " *Sarmiento v. U.S.*, 678 F.3d 147, 152 (2d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ). While Rule 8 does not require detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Iqbal*, 556 U.S. at 678 (internal citation and quotation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' ' " *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) ). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citations omitted).

**\*3** In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint. *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.' " *Id.* (quoting *Iqbal*, 556 U.S. at 679). "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.' " *Id.* (quoting *Iqbal*, 556 U.S. at 679). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

"*Pro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.' " *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) ); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). Although courts still have an obligation to interpret "a *pro se* complaint liberally,"

the complaint must include sufficient factual allegations to meet the standard of facial plausibility. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

### B. Exhaustion

Defendant argues that Plaintiff failed to properly plead exhaustion of administrative remedies because she failed to attach a notice of the right to sue letter to her complaint. Defendant argues that Plaintiff's complaint should be dismissed on this basis. The Supreme Court has held that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). The Second Circuit has explained that "a plaintiff's failure to obtain a notice-of-right-to-sue-letter is not a jurisdictional bar, but only a precondition to bringing a Title VII action that can be waived by the parties or the court." *Pietras v. Bd. of Fire Comm'rs of Farmingville Fire Dist.*, 180 F.3d 468, 474 (2d Cir. 1999). In this case, Plaintiff filed a charge with the CHRO, but she did not file a notice of right to sue letter. In her form complaint, Plaintiff states that she filed charges with the CHRO and that the EEOC issued a right to sue letter in 2014. This date appears to be incorrect since Plaintiff did not bring her CHRO claim until 2015. Regardless, Plaintiff does not attach her right to sue letter or allege that this precondition is subject to waiver, estoppel or equitable tolling. Thus, the Court finds that she has not alleged that she has exhausted her administrative remedies.

Courts in this circuit have granted *pro se* plaintiffs leave to amend where they failed to attach a right to sue letter or allege that the exhaustion requirement was otherwise waived or tolled. *See, e.g., Duarte v. W. Conn. Health Network*, No. 3:16-CV-01757 (JAM), 2017 WL 3499937, at *1 (D. Conn. July 11, 2017) (dismissing complaint but allowing *pro se* plaintiff to amend to allege exhaustion and attach release of jurisdiction from CHRO); *Canty v. Wackenhut Corrections Corp.*, 255 F. Supp. 2d 113, 117 (E.D.N.Y. 2003) (dismissing complaint for failure to allege exhaustion of administrative remedies but allowing *pro se* plaintiff to amend). For the foregoing reasons, the Court dismisses Plaintiff's claims but will allow Plaintiff to move to reopen as to her disability retaliation claim only to allege exhaustion and attach a notice of right to sue letter.

### C. Analysis

#### 1. Disability Discrimination Claims

**\*4** Plaintiff's allegations can be construed to allege disability discrimination claims based on failure to accommodate and retaliation. To state a claim for failure to accommodate, a plaintiff must show that: "(1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 118 (2d Cir. 2004); *see also Ray v. Weit*, 708 Fed. App'x 719, 721 (citing *McBride v. BIC Consumer Prod. Mfg. Co. Inc.*, 583 F.3d 92, 97 (2d Cir. 2009) ). Plaintiff must also allege that she is a "qualified individual" under the ADA, which is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *McBride*, 583 F.3d at 96 (2d Cir. 2009) (quoting 42 U.S.C. § 12111(8) ).

The ADA, as amended in 2009, defines "disability" with respect to an individual as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." [3] 42 U.S.C. § 12102(1). The definition of disability must be "construed in favor of broad coverage." *Id.* at 12102(4)(A). To determine whether a plaintiff suffers from a disability, the Court must consider: "(1) whether plaintiff had an impairment; (2) whether the impairment affected a 'major life activity' within the meaning of the ADA; and (3) whether that major life activity was substantially limited by the impairment." [4] *Laface*, No. 2:18CV01314, 2018 WL 6002395, at *6 (internal citation and quotation marks omitted). If Plaintiff fails to satisfy any of these three prongs, her discrimination claim must be dismissed. *Id.*

Plaintiff alleges that she has anxiety, but she fails to allege that her anxiety affected a major life activity. Major life activities include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."

42 U.S.C. § 12102(2)(A). Plaintiff alleges that her anxiety affected her ability to go into a basement at night, but her claim fails because this is not a major life activity. *Pineda v. ESPN, Inc.*, No. 3:18-CV-325 (MPS), 2018 WL 5268123, at *4 (D. Conn. Oct. 23, 2018) (dismissing discrimination claim based on PTSD where plaintiff failed to allege how her condition substantially limits a major life activity); *see also Cain v. Mandl Coll. of Allied Health, Mandl Coll., Inc.*, No. 14 CIV. 1729 (ER), 2016 WL 5799407, at *7 (S.D.N.Y. Sept. 30, 2016) (dismissing *pro se* complaint that contained "no allegations as to how Plaintiff's PTSD 'substantially limits' one or more of her 'major life activities' "); *see also Laface*, No. 218CV01314, 2018 WL 6002395, at *6 (dismissing discrimination claim where plaintiff alleged that his disability limited his ability to drive on the grounds that driving is not a major life activity). Plaintiff does not allege that her anxiety affected her from performing the major life activity of working. In fact, Plaintiff states that "the only job function that was performed in the basement was laundry." Dkt. 1. Plaintiff was able to perform all the other functions of her job and therefore she could have performed a similar job where the laundry was not located in the basement. *See Mazzeo v. Mnuchin*, No. 17-2686, 2018 WL 4492847, at *2 (2d Cir. Sept. 19, 2018) ("Although working is considered a major life activity, "[t]he inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." ") (internal citations and quotation marks omitted). Plaintiff fails to allege that she is a person with a disability under the meaning of the ADA, thus her failure to accommodate claim must fail.

**\*5** The final step in determining whether a plaintiff has a disability under the ADA is to determine whether she has alleged that her impairment substantially limits any major life activities. Plaintiff has not successfully pled that her impairment limits a major life activity, therefore the Court is unable to address this element. Because Plaintiff cannot establish her disability, her claim for failure to accommodate fails.

Plaintiff's complaint states a claim for disability retaliation. [5] "To establish a prima facie case of retaliation under the ADA, a plaintiff must establish that: (1) the employee was engaged in an activity protected by the ADA, (2) the employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action." [6] *Logan v.*

*SecTek, Inc.*, 632 F.Supp.2d, 179, 184 (D. Conn. 2009) (quoting *Weissman v. Dawn Joy Fashions, Inc.*, 214 F.3d 224, 234 (2d Cir. 2000) ).

As to the first element, a plaintiff engaged in protected activity if she "opposed any act or practice made unlawful" by the ADA or "made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing" under the ADA. 42 U.S.C § 12203(a). Plaintiff engaged in protected activity when she requested a reasonable accommodation and filed her charge with the CHRO. Defendant was aware of Plaintiff's accommodation request and CHRO charge.

With regard to adverse employment action, Plaintiff alleges that after she requested an accommodation, she was placed on a final written warning. Plaintiff does not directly allege that she was terminated in retaliation for requesting an accommodation or filing her charge before the CHRO, but she alleges that Defendant admonished her for "having expressed [her] disability and fears" and that her termination was retaliatory. Dkt. 1. Plaintiff's first allegation does not rise to the level of an adverse employment action because such actions must constitute "a materially adverse change in the terms and conditions of employment." *Sanders v. New York City Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004). However, termination suffices as an adverse employment action. *Id.* Therefore, the Court finds that Plaintiff has established an adverse employment action.

Plaintiff's allegations meet the final hurdle to show causation. "As other courts within the Second Circuit have held, temporal proximity is sufficient to raise an inference of discrimination to plausibly state a claim of employment discrimination." *Vale v. Great Neck Water Pollution Control Dist.*, 80 F. Supp. 3d 426, 437 (E.D.N.Y. 2015) (quoting *Shlafer v. Wackenhut Corp.*, 837 F. Supp. 2d 20, 27 (D. Conn. 2011) ); *see also Siuzdak v. Lynch*, No. 14-CV-001543 (VAB), 2016 WL 868801, at *6 (D. Conn. Mar. 7, 2016) (denying motion to dismiss where plaintiff filed EEOC complaint and retaliatory investigation occurred four months later). Plaintiff sufficiently alleges that a causal connection existed between her request for a reasonable accommodation and the adverse employment action. Here, Plaintiff alleges that she met with Defendant on May 11, 2015 to discuss her accommodations. This is the same day Plaintiff filed her charge with the CHRO. In her

form complaint, Plaintiff states that she was terminated on July 18, 2015. Taking these allegations together, the Court finds that a causal connection existed between Plaintiff's alleged discussion of her accommodation and her termination. However, as explained above, the Court allows Plaintiff twenty-one days to move to reopen to allege exhaustion and attach a notice of right to sue letter.

### 2. Race, Sex, National Origin and Age Discrimination Claims

**\*6** Plaintiff's race, sex, national origin and age discrimination claims fail because she did not exhaust her administrative remedies. "Exhaustion of administrative remedies through the EEOC is 'an essential element' of the Title VII and ADEA statutory schemes and, as such, a precondition to bringing such claims in federal court." *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) (internal citations and quotation marks omitted). "[A] district court only has jurisdiction to hear such claims where they were either included in an EEOC charge or are based on conduct subsequent to the charge which is 'reasonably related' to that alleged in the EEOC charge." *Butts v. City of N.Y. Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993) *superseded by statute on other grounds as stated in Hawkins v. 1115 Legal Serv. Care*, 163 F.3d 684 (2d Cir. 1998). "A claim is considered reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made." *Deravin v. Kerik*, 335 F.3d 195, 200-01 (2d Cir. 2003) (internal citation and quotation marks omitted).

Plaintiff brought her complaint before the CHRO on May 11, 2015 and amended her complaint on March 10, 2016. Plaintiff did not allege claims for race, sex, national origin or age discrimination in either complaint. The complaints allege only disability discrimination and retaliation based on her anxiety disorder and Defendant's alleged failure to provide an accommodation. Therefore, the Court dismisses Plaintiff's claims of race, sex, national origin and age discrimination because they are not based on conduct reasonably related to disability discrimination.

Even if these claims were reasonably related to the claims raised in the CHRO complaint, they would still fail. To state a claim for discrimination under Title VII, "a

plaintiff must plausibly allege that (1) the employer took adverse action against him, and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015); *see also Gupte v. Watertown Bd. of Educ.*, No. 3:17-CV-283 (JCH), 2018 WL 4054880, at *5 (D. Conn. Aug. 24, 2018) ("To state a claim for age discrimination under the ADEA, a plaintiff must plausibly allege that (1) her employer took adverse action against her, and (2) that age was the 'but for' cause in the employer's adverse action.") (internal citation and quotation marks omitted). In her complaint before this Court, Plaintiff alleges that Defendant put her on a final warning because of her race. Plaintiff claims her allegation of race discrimination is "confirmed" because she asked a co-worker "how she would feel if something like this was happening to her children, who are biracial." Dkt. 1. Plaintiff does not allege any facts to show that race, sex, national origin or age were factors in any of Defendant's employment decisions against her. Therefore, Plaintiff's race, sex, national origin and age discrimination claims are dismissed.

### 3. FMLA Interference and Retaliation Claims

Plaintiff fails to state claims for FMLA interference and retaliation.[7] To state a claim for FMLA interference, Plaintiff must show: "(1) [S]he is an eligible employee under the FMLA; (2) that [the employer] is an employer as defined in [the] FMLA; (3) that [she] was entitled to leave under [the] FMLA; (4) that [she] gave notice to [the employer] of [her] intention to leave; and (5) that [she] was denied benefits to which she was entitled under [the] FMLA." *Wanamaker v. Westport Bd. of Educ.*, 899 F. Supp. 193, 205 (D. Conn. 2012) (collecting cases). To state a claim for FMLA retaliation, Plaintiff must show: "(1) [she] exercised rights protected under the FMLA; (2) [she] was qualified for [her] position; (3) [she] suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Id.* at 206-07 (quoting *Potenza v. City of New York*, 365 F.3d 165, 167-68 (2d Cir. 2004)). Plaintiff must also allege that the FMLA leave was a negative factor in the termination decision. *Id.*

**\*7** Plaintiff fails to allege the necessary elements for FMLA interference or retaliation. With regards to her

interference claim, Plaintiff fails to allege that she was denied FMLA benefits to which she was entitled. In fact, Plaintiff alleges that she "applied for and was granted FMLA." Dkt. 1. With regards to her retaliation claim, Plaintiff alleges that at a meeting in May 2015, Defendant yelled at her, indicated that she was violating policy by calling out of work under approved FMLA leave time, and advised her that she was being disciplined for not having the proper paperwork in place. *Id.* Plaintiff claims Defendant intentionally retaliated against her because of her FMLA leave. In considering whether a comment is probative of intent to discriminate, a court must consider: "(1) who made the remark, i.e. a decisionmaker, a supervisor, or a low-level co-worker; (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark, i.e., whether a reasonable juror could view the remark as discriminatory; and (4) the context in which the remark was made, i.e., whether it was related to the decisionmaking process." *Wanamaker*, 899 F. Supp. 2d at 208 (internal citation and quotation marks omitted). Plaintiff does not allege who made these comments to her, but it appears they were made approximately two months prior to her termination. The Court does not find that the remark is discriminatory

because it relates to her failure to file the correct paperwork not her FMLA leave. Moreover, Plaintiff does not allege that it was made in relation to Defendant's decision to terminate her. Therefore, Plaintiff's claims for FMLA interference and retaliation are dismissed.

IV. Conclusion

For the foregoing reasons, Defendant's motion to dismiss is GRANTED. This dismissal is without prejudice in deference to Plaintiff's *pro se* status. The Court grants Plaintiff liberty to file a motion to reopen together with an amended complaint within twenty-one days of the date of this order, as to her claim for disability retaliation only, alleging exhaustion and attaching a notice of right to sue letter.

IT IS SO ORDERED.

**All Citations**

Slip Copy, 2018 WL 6529178, 2018 Fair Empl.Prac.Cas. (BNA) 460,151, 2018 A.D. Cases 460,151

Footnotes

1    On the final day to comply with the Court's order, Plaintiff made a late afternoon in-person filing. Although the filing is dated November 2, 2018, the Court was not aware of it until after it granted Defendant's motion to dismiss on November 5, 2018. Dkt. 44. Plaintiff's filing fails to substantively respond to the motion to dismiss. It contains medical records and filings before the Connecticut Commission on Human Rights and Opportunities ("CHRO"). Plaintiff does not include a memorandum of law. However, because Plaintiff filed a response and in light of the Second Circuit's preference for resolving disputes on the merits, the Court further articulates its ruling on Defendant's motion to dismiss.

2    Defendant's motion to dismiss fails to address the letter attached to the form complaint and the additional discrimination claims contained therein. Because the Court considers the letter part of Plaintiff's complaint, as discussed herein, the Court will analyze all of the allegations in the letter.

3    The Court will address the first prong of the disability analysis. Plaintiff does not allege that she has a record of an impairment or that Defendant regarded her as having an impairment. However, even if Plaintiff's allegations could reasonably be construed as alleging that Defendant regarded Plaintiff has having a disability, her claim would still fail. "This inquiry turns on the employer's perception of the employee and is therefore a question of intent, not whether the employee has a disability." *Laface v. E. Suffolk Boces*, No. 218CV01314ADSAKT, 2018 WL 6002395, at *7 (E.D.N.Y. Nov. 15, 2018) (internal citations and quotation marks omitted). Plaintiff alleged that Defendant told her that she was coming up with a "myriad of reasons" for why she did not have to do the laundry. Indeed, Plaintiff does not allege that Defendant regarded her as disabled, but that Defendant thought she was making excuses to avoid doing her job.

4    Plaintiff checked the box in her form complaint indicating that she was bringing her action pursuant to the Rehabilitation Act. Plaintiff does not make any specific allegations about this statute, however, it adopts the definition of disability set forth in the ADA. Therefore, to the extent Plaintiff alleged a Rehabilitation Act claim, it fails for the same reasons her ADA claim fails. *See* 29 U.S.C. § 705(9).

5    Defendant's motion to dismiss makes cursory arguments in response to Plaintiff's disability claims. First, Defendant argues that Plaintiff failed to exhaust her administrative remedies because her amended complaint before the CHRO does not reference the ADA. The Court finds that Plaintiff's state disability discrimination claims are reasonably related

to her ADA claims and therefore she has exhausted her administrative remedies. Second, the Court is not persuaded by Defendant's argument that the form complaint does not contain allegations of discrimination because as discussed *infra*, the Court will consider the letter attached to Plaintiff's complaint.

6       The Rehabilitation Act contains "similar provisions against retaliation and [is] governed in this respect by the same standards as the ADA." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002). Therefore, Plaintiff's Rehabilitation Act claim for retaliation survives to the same extent as her ADA claim for retaliation.

7       The FMLA does not require an exhaustion of administrative remedies prior to commencing an action under its provisions. *DiCesare v. Town of Stonington*, No. 15-CV-1703 (VAB), 2017 WL 1042056, at *6 (D. Conn. Mar. 17, 2017).

---

2018 WL 2077884
United States District Court, N.D. New York.

Johnny W. CROSBY, Jr., Plaintiff,
v.

MCDONALD'S OF GUILDERLAND, LLC, Fran
DeLeon, General Manager of McDonald's of
Guilderland, LLC, formerly known as Fran
"LNU," and Michell Wolf LLC, Defendants.

1:17-CV-1160 (MAD/DEP)
|
Signed 05/02/2018

**Attorneys and Law Firms**

KARPF, KARPF LAW FIRM—BENSALEM
OFFICE, OF COUNSEL: ADAM C. LEASE, ESQ.,
3331 Street Road, Two Greenwood Square, Suite 128,
Bensalem, Pennsylvania 19020, Attorney for Plaintiff.

MAYNARD, O'CONNOR LAW FIRM—ALBANY
OFFICE, OF COUNSEL: ANDREA P. DEMERS,
ESQ., JUSTIN W. GRAY, ESQ., 6 Tower Place, Albany,
New York 12203, Attorneys for Defendants McDonald's
of Guilderland, LLC and Fran DeLeon.

CARTER, CONBOY, CASE, BLACKMORE,
MALONEY & LAIRD, P.C., OF COUNSEL:
MICHAEL J. MURPHY, ESQ., BRIENNA L.
CHRISTIANO, ESQ., 20 Corporate Woods Boulevard,
Albany, New York 12211, Attorneys for Defendant
Michell Wolf LLC.

**MEMORANDUM-DECISION AND ORDER**

Mae A. D'Agostino, U.S. District Judge

**I. INTRODUCTION**

**\*1** On October 18, 2017, Plaintiff Johnny W. Crosby,
Jr. ("Plaintiff") filed a Complaint against Defendants
McDonald's of Guilderland, LLC ("Guilderland") and
Fran DeLeon in the Northern District of New York.
See Dkt. No. 1. On October 30, 2017, Plaintiff filed an
Amended Complaint that added Defendant Michell Wolf
LLC ("MW") as a party and alleged unlawful employment
practices under the Americans with Disabilities Act

("ADA"), 42 U.S.C. §§ 12101 et seq., the Family and
Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 et
seq., and the New York State Human Rights Law
("NYSHRL"), N.Y. Exec. Law § 290 et seq. See Dkt.
No. 6. Specifically, the Amended Complaint alleged
three causes of action: (1) interference and retaliation
in violation of the FMLA against all three Defendants,
see id. at ¶¶ 30-38; (2) discrimination and retaliation in
violation of the ADA against Guilderland and MW, see
id. at ¶¶ 39-44; and (3) discrimination and retaliation in
violation of the NYSHRL against Guilderland and MW,
see id. at ¶¶ 45-47. On December 18, 2017, Defendants
DeLeon and Guilderland filed a motion to dismiss for
failure to state a claim pursuant to Federal Rule of Civil
Procedure 12(b)(6). See Dkt. No. 22. On February 12,
2018, MW filed its own motion to dismiss. See Dkt. No.
37.

Currently before the Court are Defendants' motions to
dismiss Plaintiffs' Amended Complaint. For the following
reason, the motions are denied.

**II. BACKGROUND**

On April 15, 2015, Plaintiff was hired to perform grill and
maintenance work by the McDonald's franchise located at
1602 Western Avenue (the "Franchise") in Guilderland,
New York. See Dkt. No. 6 at ¶¶ 11, 16-17. Plaintiff suffers
from various disabilities and serious health conditions,
including an inguinal hernia, which occasionally limit
"Plaintiff's ability to work, stand, squat[,] and lift." Id. at
¶ 18. On occasion, Plaintiff would need accommodations,
such as taking short breaks and time off for medical
treatment, because of his disabilities. See id. at ¶ 20.
Plaintiff had told Defendant DeLeon, a high level
manager with authority to make decisions concerning the
terms and conditions of Plaintiff's employment, about his
disabilities. See id. at ¶¶ 10, 21. Despite his disabilities,
Plaintiff performed well at his job during the course of his
employment. See id. at ¶ 19.

In July 2016, Plaintiff took six weeks of FMLA qualifying
leave for medical treatment. See id. at ¶ 22. Plaintiff
returned to work in mid-August 2016. See id.

On September 14, 2016, Plaintiff injured himself while
performing freezer maintenance at the Franchise and went
to the emergency room for treatment. See id. at ¶ 23.

Plaintiff returned to work on September 15, 2016, and requested a light duty accommodation. *See id.* That day, Plaintiff's employment was terminated. *See id.* at ¶ 24. Plaintiff alleges that Defendant DeLeon told him "that he was terminated for reasons directly related to his health conditions." *Id.* On November 8, 2016, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") against Guilderland regarding Plaintiff's termination on September 15, 2016 (the "First Charge"). *See id.* at ¶ 25.

**\*2** At all times during the course of Plaintiff's employment, the Franchise was owned by Guilderland. *See id.* at ¶¶ 8, 11. On January 2, 2017, MW purchased the Franchise from Guilderland. *See id.* at ¶ 11. Defendant DeLeon continued her managerial role under the new ownership. *See id.* at ¶ 10. Plaintiff alleges that after the purchase, MW continued to operate the Franchise without interruption and with the same employees. *See id.* at ¶ 12. Plaintiff further alleges that Guilderland and MW are interrelated entities because they have a common ownership and their management and finances are under centralized control. *See id.* at ¶ 13.

In February 2017, Plaintiff was offered to be rehired or reinstated by the Franchise at his previous level of compensation. *See id.* at ¶ 26. Plaintiff completed an employment application and waited to be informed of his start date. *See id.* On May 1, 2017, Plaintiff was contacted by Lamar Johnson, the general manager in training, who told Plaintiff that the Franchise would not rehire him because Defendant DeLeon had advised the owners against rehiring him. *See id.* at ¶ 27.

On June 3, 2017, Plaintiff filed a second charge of discrimination with the EEOC (the "Second Charge"), alleging that the Franchise terminated and refused to rehire him because of his health conditions. *See id.* at 12. In the Second Charge, Plaintiff identified Guilderland as his employer and used the Franchise's address as its location. *See id.*

On August 24, 2017, the EEOC issued a notice of right to sue for the Second Charge. *See id.* at 13. The EEOC sent a copy of the notice of right to sue to the Franchise and to Plaintiff's counsel. *See id.*

## III. DISCUSSION

### A. Standard of Review

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) ).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief.' " *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' ' " *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed[,]" *id.* at 570.

### B. Unlawful Termination

### *1. Time Bar*

**\*3** In order to pursue an ADA claim in federal court, a plaintiff ordinarily must first file a charge of discrimination with the EEOC or the appropriate state agency. *See Johnson v. Palma*, 931 F.2d 203, 209 (2d Cir. 1991) (citing 42 U.S.C. § 2000e-5(e) ). Defendants note that the ADA, which incorporates the administrative exhaustion requirements of Title VII, requires a plaintiff to "file a charge of discrimination with the EEOC within 180 days of the alleged unlawful employment action or, if the claimant has already filed the charge with a state or local equal employment agency, within 300 days of the alleged discriminatory action." *See* Dkt. No. 22-4 at 5 (quoting *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir. 1996) ). Accordingly, Defendants argue that because the Amended Complaint only includes a copy of the Second Charge, which was filed more than 180 days after Plaintiff was terminated on September 15, 2016, Plaintiff failed to bring his wrongful termination charge before the EEOC in a timely manner. *See id.* at 6.

The Amended Complaint alleges that Plaintiff filed the First Charge in November 2016. A complaint does not need to attach copies of the EEOC charge in order to satisfy the exhaustion requirement—specific allegations that the plaintiff filed charges with the EEOC are sufficient to withstand a motion to dismiss. *See Spillman v. Carter*, 918 F. Supp. 336, 341 (D. Kan. 1996); *see also Campos v. Las Cruces Nursing Ctr.*, 828 F. Supp. 2d 1256, 1271 (D.N.M. 2011) (dismissing where the complaint only stated that the plaintiff "timely filed charges ... with the [EEOC] and satisfied all administrative requirements for filing this suit"). As the First Charge was filed well within 180 days of his termination and Defendants have not challenged the sufficiency of this allegation, the Amended Complaint has plausibly alleged facts that satisfy the exhaustion requirement.

Further, under a work-sharing agreement between the New York State Department of Human Rights ("NYSDHR") and the EEOC, an EEOC charge is "deemed to have been filed 'initially' with the NYSDHR." *Tewksbury v. Ottaway Newspapers*, 192 F.3d 322, 327 (2d Cir. 1999). As a result, an "NYSDHR proceeding ... formally beg[ins] and end[s] upon the EEOC's receipt of the charge ... before [it is] ... deemed as filed with the EEOC." *Id.* Accordingly, "a complaint must be filed with the EEOC within 300 days of the alleged discriminatory act." *Smiley v. Golub Corp.*, No. 14-CV-0641, 2015 WL

566323, *3 (N.D.N.Y. Feb. 10, 2015) (citations omitted). Given that the Second Charge was filed within 300 days from Plaintiff's termination, the Second Charge is also sufficient to satisfy the exhaustion requirement.

### *2. Discrimination Under the ADA and NYSHRL*

In order to make out a prima facie case of discrimination or retaliation under the ADA, a plaintiff must demonstrate that

> "(1) the defendant is covered by the ADA; (2) plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of his disability or perceived disability."

*Kinneary v. City of New York*, 601 F.3d 151, 156 (2d Cir. 2010) (quoting *Capobianco v. City of New York*, 422 F.3d 47, 56 (2d Cir. 2005) ). "The elements of a prima facie case for discrimination prohibited by the NYSHRL are the same as a claim under the ADA[.]" *Starr v. Time Warner, Inc.*, No. 07 Civ. 5871, 2007 WL 4144627, *6 (S.D.N.Y. Nov. 21, 2007) (citation omitted).

The ADA defines "disability" as: "A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; B) a record of such an impairment; or C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Under the ADA, "major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). "The mere presence of a medical condition does not establish that a plaintiff is disabled." *O'Donnell v. King B 100, LLC*, No.14-cv-1345, 2016 WL 7742779, *9 (N.D.N.Y. May 3, 2016) (citations omitted). "In addition, it is well settled that temporary impairments with little or no long-term permanent impact are not disabilities under the ADA." *Id.* (citations omitted). Such temporary or "transitory" impairments are defined "as lasting six months or less." 42 U.S.C. § 12102(3)(B).

**\*4** Here, the Amended Complaint alleges that Plaintiff suffered from health problems, including an inguinal hernia, which limited his ability to stand, squat, lift, and

work. It also alleges that Defendant DeLeon told Plaintiff he was terminated because of these health problems. Thus, the Amended Complaint alleges that Plaintiff was terminated due to impairments that limited major life activities. Defendants argue that Plaintiff has not alleged a disability covered under the ADA for five reasons: (1) the Amended Complaint states that Plaintiff returned to work from his FMLA leave without restrictions; (2) multiple cases have found that a hernia is not a covered disability; (3) other than the hernia, the Amended Complaint does not identify any specific disabilities; (4) Plaintiff has not identified how he was injured on September 14, 2016; and (5) Plaintiff has not linked that injury to his inguinal hernia. *See* Dkt. No. 22-4 at 8-9.

The Amended Complaint does not allege that Plaintiff was able to return to work from his FMLA leave without restrictions. The Amended Complaint only states that Plaintiff returned to work in mid-August. Although the Amended Complaint does not specifically state that Plaintiff had restrictions, it does state that Plaintiff's health conditions necessitated accommodations during the course of his employment. *See* Dkt. No. 6 at ¶ 20. Additionally, the Amended Complaint does not state that Plaintiff was cured of his ailments—in fact, it states the opposite, that Plaintiff continues to suffer from them to this day. Making all reasonable inferences in favor of the non-moving party, the Court cannot conclude that Plaintiff returned from FMLA leave cured of his previous ailments.

With regards to Defendants' second argument, the cases that Defendants cite in support of their claim that a hernia cannot be a disability under the ADA are unpersuasive. Almost all of the cases that Defendants cite in support of their argument predate the ADA Amendments Act of 2008 ("ADAAA"), Pub. L. No. 110-325, 122 Stat. 3553(codified at 42 U.S.C. § 12101 *et seq.*). *See* Dkt. No. 22-4 at 8. The ADAAA, which took effect on January 1, 2009, broadened the scope of what constitutes a covered disability. *See Schmidt v. Town of Cheverly, MD.*, 212 F. Supp. 3d 573, 581 (D. Md. 2016). Since then, federal district courts have repeatedly found that a hernia can qualify as a covered disability. *See id.* (citing cases).

Although some post-ADAAA cases have dismissed hernia claims, they did so because the complaint did not allege sufficient facts to establish a covered impairment, not because of a *per se* preclusion. Like any other covered

impairment, the hernia must substantially limit a major life activity. *See, e.g., Horsham v. Fresh Direct*, 136 F. Supp. 3d 253, 263 (E.D.N.Y. 2015); *Butler v. BTC Foods Inc.*, No. CIV.A. 12-492, 2012 WL 5315034, *2 (E.D. Pa. Oct. 19, 2012). Further, a hernia claim must also allege that the hernia caused a long-term impairment. *See Davis v. Vermont, Dep't of Corr.*, 868 F. Supp. 313, 327 (D. Vt. 2012); *see also Peoples v. Langley/Empire Candle Co.*, No. 11-2469, 2012 WL 171340, *2 (D. Kan. Jan. 20, 2012).

Here the Amended Complaint includes allegations Plaintiff's health problems limited Plaintiff's ability to lift, squat, and stand, which constitute limitations in major life activities. The Amended Complaint alleges that the effects of his health conditions remained when the Amended Complaint was filed. Because this period is greater than six months, the impairment was not transitory. As such, the Amended Complaint plausibly alleges, albeit barely, specific factual averments as to both the hernia's effect and duration to establish a disability under the ADA.

Finally, given that Plaintiff's allegations regarding his hernia are sufficient to sustain the claim, the Court need not address Defendants' arguments that Plaintiff did not specify his other health problems, the nature of the September 14, 2016 injury, or how said injury was related to Plaintiff's hernia.

### 3. FMLA Interference and Retaliation Claims

**\*5** The FMLA provides eligible employees an "entitlement" to twelve workweeks per year of unpaid leave "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). It is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by the FMLA. 29 U.S.C. § 2615(a)(1). At the end of a period of FMLA leave, the employee has the right to be restored to the position, or its equivalent, that he or she held prior to taking leave. 29 U.S.C. § 2614(a)(1)(A). The FMLA expressly creates a private cause of action for equitable relief and money damages against any employer who violates Section 2615. *See* 29 U.S.C. § 2617(a)(2); *Nevada Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 724-25 (2003).

"FMLA claims come in at least two varieties: interference and retaliation." *Woods v. START Treatment & Recovery Ctrs., Inc.*, 864 F.3d 158, 166 (2d Cir. 2017) (citation

omitted). "In a general sense, an employee brings an 'interference' claim when her employer has prevented or otherwise impeded the employee's ability to exercise rights under the FMLA." *Id.* (citation omitted). " 'Retaliation' claims, on the other hand, involve an employee actually exercising her rights or opposing perceived unlawful conduct under the FMLA and then being subjected to some adverse employment action by the employer." *Id.* (citation omitted).

### *a. FMLA Interference*

"To succeed on a claim of FMLA interference, a plaintiff must establish that the defendant denied or otherwise interfered with a benefit to which she was entitled under the FMLA." *Graziadio v. Culinary Instit. of Am.*, 817 F.3d 415, 424 (2d Cir. 2016) (citing 29 U.S.C. § 2615(a)(1) ). To plausibly allege FMLA interference, the plaintiff must claim the following: "1) that she is an eligible employee under the FMLA; 2) that the defendant is an employer as defined by the FMLA; 3) that she was entitled to take leave under the FMLA; 4) that she gave notice to the defendant of her intention to take leave; and 5) that she was denied benefits to which she was entitled under the FMLA." *Id.*

In the present matter, the Court finds that Plaintiff has failed to allege a plausible FMLA interference claim. Plaintiff alleges that he received six weeks of FMLA from Defendants from July 2016 until he returned to work in mid-August 2016. *See* Dkt. No. 6 at ¶ 22. Thereafter, Plaintiff alleges that on September 14, 2016, he "injured himself again at work and required treatment in the emergency room." *Id.* at ¶ 23. Plaintiff claims that when he returned to work the following day, "he requested the reasonable accommodation of light duty." *Id.* Upon requesting the reasonable accommodation, Plaintiff claims that he was terminated that same day. *See id.* at ¶ 24.

Nothing in the Amended Complaint sets forth a claim of FMLA interference. The facts make clear that Plaintiff was requesting a "reasonable accommodation" when he was terminated. He did not claim that he made an additional request for FMLA leave and that Defendants somehow denied him that leave.

Based on the foregoing, the Court grants Defendants' motion insofar as it seeks dismissal of Plaintiff's FMLA interference claim.

### *b. FMLA Retaliation*

To establish a prima facie case of retaliation under the FMLA, a plaintiff must show "1) he exercised rights protected under the FMLA; 2) he was qualified for his position; 3) he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004). An inference of retaliatory intent can be established "when there is a basis for a jury to conclude that 'a causal connection [exists] between the plaintiff's protected activity and the adverse action taken by the employer.' " *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 152 (2d Cir. 2012) (citing *Mack v. Otis Elevator Co.*, 326 F.3d 116, 129 (2d Cir. 2003) ); *see also Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010).

**\*6** FMLA retaliation claims grounded in § 2615(a)(1) use a "motivating factor" causation standard. *See Woods*, 864 F.3d at 166. "Proof of the causal connection can be established indirectly by showing that the protected activity was closely followed in time by the adverse action." *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988); *see also Davis v. State Univ. of N.Y.*, 802 F.2d 638, 642 (2d Cir. 1986). "In order for temporal proximity to establish causality, the intervening period must be 'very close.' " *Ashok v. Barnhart*, 289 F. Supp. 2d 305, 314 (E.D.N.Y. 2003) (quoting *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001) ). The Second Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship." *Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cty.*, 252 F.3d 545, 554 (2d Cir. 2001). District courts have generally found, however, that "a passage of two months between the protected activity and the adverse employment action seems to be the dividing line." *Ruhling v. Tribune Co.*, No. 04 Civ. 2430, 2007 WL 28283, \*23 (E.D.N.Y. Jan. 3, 2007) (citing cases); *see also Garrett v. Garden City Hotel, Inc.*, No. 05-CV-0962, 2007 WL 1174891, \*21 (E.D.N.Y. Apr. 19, 2007) (noting that "district courts in this Circuit have consistently held that a passage of more than two

months between the protected activity and the adverse employment action does not allow for an inference of causation").

Defendants contend that Plaintiff has failed to plausibly allege a causal connection between the FMLA leave taken and any adverse employment action. *See* Dkt. No. 22-4 at 7. Plaintiff, however, alleges that he was terminated on September 15, 2016, one day after he suffered an injury at work and approximately one month after his return from FLMA leave. *See* Dkt. No. 6 at ¶¶ 22-24. The close temporal proximately between Plaintiff's return from FMLA leave and his termination is sufficient to satisfy the causal connection requirement at this stage. *See Cooper v. N.Y.S. Nurses Ass'n*, 847 F. Supp. 2d 437, 448-49 (E.D.N.Y. 2012) (holding that evidence of close temporal proximity between management-level employee's FMLA leave and her termination, less than two months after her return, was sufficient to establish fourth element of her prima facie case of FMLA retaliation, *i.e.*, that adverse employment action occurred under circumstances giving rise to inference of retaliation).

Based on the foregoing, the Court denies Defendants' motion to dismiss Plaintiff's FMLA retaliation claim.

### *4. ADA Retaliation*

Defendants further argue that the Amended Complaint fails to allege that Plaintiff "participated in a Title VII investigation or opposed a discriminatory practice." *See* Dkt. No. 22-4 at 9 (quoting *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 172 (2d Cir. 2005) ). Thus, Defendants contend that the Amended Complaint does not allege Plaintiff participated in a protected activity under Title VII.

Initially, the Court notes that Plaintiff is alleging retaliation claims under the ADA and the FMLA, not Title VII. As such, Defendants arguments pertaining to Title VII are irrelevant.

Second, to the extent that Defendants are attempting to argue that Plaintiff failed to allege an ADA retaliation claim, the Court disagrees. In his complaint, Plaintiff specifically states that on September 15, 2016, after he returned to work from receiving medical treatment at the emergency room, he "requested further accommodations." Dkt. No. 6 at ¶ 24. That same day, Plaintiff was terminated and informed by Defendant Fran

that he was being terminated because of his "health conditions." *Id.* Considering these allegations and the other facts set forth above, the Court finds that Plaintiff plausibly alleges an ADA retaliation claim. *See Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 149 (2d Cir. 2002) (holding that "seeking reasonable accommodation[s] ... constitutes protected activity under [the ADA]").

**\*7** Based on the foregoing, the Court denies Defendants motions insofar as they seek the dismissal of Plaintiff's ADA retaliation claim.

### *5. MW's Successor Liability*

MW argues it is not liable for conduct prior to its acquisition of the Franchise. *See* Dkt. No. 37-4. At this stage of the litigation, the Court disagrees.

In employment cases, "successor liability operates as 'an extra-contractual remedial tool for imposing certain labor obligations on a new employer that has taken over operations of an old employer.' " *E.E.O.C. v. Nichols Gas & Oil, Inc.*, 518 F. Supp. 2d 505, 510 (W.D.N.Y. 2007) (citations omitted); *see also* 29 C.F.R. § 825.104(a). "For an employer to be considered a successor there must be substantial continuity of identity in the business enterprise before and after a change." *Forde v. Kee Lox Mfg. Co.*, 584 F.2d 4, 5 (2d Cir. 1978) (quotation omitted); *see also Abdel-Khalek v. Ernst & Young, L.L.P.*, No. 97 CIV. 4514, 1999 WL 190790, \*7 (S.D.N.Y. Apr. 7, 1999) (applying Title VII's substantial continuity test to an ADA claim); 29 C.F.R. § 825.107(a) (noting that the FMLA uses the same factors as Title VII for "determining successor liability for violations of the predecessor"). [1]

Under the substantial continuity test, courts are guided by three factors: "(1) whether the successor had notice of the claim prior to the acquisition; (2) whether the successor substantially continued the business operations of its predecessor following the acquisition; and (3) whether the predecessor is able to provide the relief sought." *Nichols Gas & Oil, Inc.*, 518 F. Supp. 2d at 512 (citing, inter alia, *E.E.O.C. v. Barney Skanska Constr. Co.*, 2000 WL 1617008, \*2 (S.D.N.Y. 2000) ); *see also* 29 C.F.R. § 825.107(a). "No one factor is controlling, and it is not necessary that each factor be met to find successor liability. *Barney Skanska Constr. Co.*, 2000 WL 1617008 at \*2.

### a. Notice

**\*8** According to the Amended Complaint, Plaintiff filed the First Charge with the EEOC in November 2016. The First Charge provided Guilderland actual notice of Plaintiff's disability claims. Further, regardless of whether the First Charge provided actual notice of Plaintiff's FMLA claims, [2] the existence of the charge coupled with the close temporal proximity between Plaintiff's FMLA leave and termination would have given Guilderland notice as to its potential FMLA liability. As the Amended Complaint alleges that Guilderland and MW share ownership and management, it is reasonable to infer that any notice possessed by Guilderland would be imputed onto MW. Given that the Amended Complaint has plausibly alleged that MW had notice of the potential claims against the Franchise, the first factor weighs in favor of successor liability.

### b. Continuity

With respect to continuity, courts should consider the identity of the workforce and physical location. *See id.*; *E.E.O.C. v. Local 638*, No. 71 CIV. 2877, 1988 WL 25151, *13 (S.D.N.Y. Mar. 9, 1988), *aff'd*, 700 F. Supp. 739 (S.D.N.Y. 1988). According to the Amended Complaint, MW continued to operate the Franchise as a McDonald's at the same location and with the same workforce and management. Accordingly, this factor weighs in favor of finding successor liability. *See Lamar v. Inst. for Family Health,* No. 1:09-CV-1154, 2011 WL 2432925, *8 (N.D.N.Y. June 16, 2011), *aff'd*, 472 Fed. Appx. 98 (2d Cir. 2012).

### c. Ability of Predecessor to Provide Relief

As to the ability to provide relief,

> "[f]ailure to hold a successor employer liable for the discriminatory practices of its predecessor could emasculate the relief provisions of Title VII by leaving the discriminatee without a remedy or with a[n] [in]complete remedy. In the case where the predecessor company no longer had any assets, monetary relief would be precluded."

*Fennell v. TLB Plastics Corp.*, No. 84 CIV. 8775, 1989 WL 88717, *4 (S.D.N.Y. July 28, 1989) (citing *E.E.O.C. v. MacMilan Bloedel Containers, Inc.*, 503 F.2d 1086, 1091-92 (6th Cir. 1974) ).

Plaintiff has alleged that "MW is in the best and only position to provide relief ... as it is unclear at this stage of the litigation whether Defendant Guilderland is capable of providing any relief, having divested itself of the business operations which employed Plaintiff and its assets therein." *See* Dkt. No. 6 at ¶ 12. Given that the Amended Complaint alleges that Guilderland had divested itself of the Franchise, it is unclear at this stage whether it has any additional assets and if it will be able to provide relief. As such, the third factor weighs in favor of finding successor liability.

### d. Weighing the Factors

Because all three factors weigh in favor of finding MW liable as a successor to Guilderland, the Court finds that Plaintiff has plausibly alleged that MW is liable as a successor in interest. Therefore, the Court must deny MW's motion to dismiss the claims against it arising from the termination.

## C. Failure to Rehire

The Amended Complaint alleges that Defendants wrongfully refused to rehire him in early 2017. A failure-to-rehire claim can be the basis for a cause of action under the ADA or FMLA. *See Nelson v. City of New York*, No. 11 CIV. 2732, 2013 WL 4437224, *8 (S.D.N.Y. Aug. 19, 2013) (recognizing a failure to rehire action brought under the ADA); *McFarlane v. Chao*, No. 04CV4871, 2007 WL 1017604, *23 (S.D.N.Y. Mar. 30, 2007) (recognizing a failure to rehire action brought under the FMLA). In order to establish a failure-to-rehire claim, a plaintiff must "first establish a prima facie case of discrimination or retaliation; and that requires, inter alia, that [he] proffer evidence that the decision not to rehire [him] was made under circumstances giving rise to an inference of discriminatory or retaliatory intent." *Yetman v. Capital Dist. Transp. Auth.*, 669 Fed. Appx. 594, 595 (2d Cir. 2016).

### 1. Refusal to Rehire Claim Against MW

**\*9** MW argues that Plaintiff failed to allege facts that MW refused to rehire him because of his disability or utilization of his FMLA leave. *See* Dkt. No. 37-4 at 12-14. The Court disagrees.

The Amended Complaint states that Defendant DeLeon advised MW against rehiring Plaintiff. Plaintiff alleges that when he was originally terminated, Defendant DeLeon told him that the decision was made, in part, due to his physical ailments. Further, Plaintiff also alleges that Defendant DeLeon terminated him in retaliation for utilizing FMLA leave. Considering these facts, the Court finds that Plaintiff has plausibly alleged facts that give rise to an inference of retaliatory and discriminatory intent behind the Franchise's failure to rehire him in 2017.

### *2. Refusal to Rehire Claim Against Guilderland*

Guilderland argues that it is not liable for refusing to rehire Plaintiff because the decision was made after Guilderland sold the Franchise to MW. *See* Dkt. No. 22-4 at 10. Plaintiff has not responded to this argument and the Amended Complaint makes clear that Guilderland was no longer operating the Franchise when the Franchise refused to rehire Plaintiff. As such, Guilderland is correct that it is not liable for any claims arising from the Franchise's decision to not rehire Plaintiff. Therefore, the Court grants Defendants Guilderland's motion as to Plaintiff's refusal to rehire claim.

### *3. MW's Identity of Interest*

Given that Guilderland is not liable for any potential refusal to rehire claims, MW cannot be liable under a theory of successor liability. Further, MW notes that Plaintiff failed to identify it as a party in the Second Charge. *See* Dkt. No. 37-4 at 5. Because courts generally lacks subject matter jurisdiction over parties who were not identified in an EEOC charge, *see Bridges v. Eastman Kodak Co.*, 822 F. Supp. 1020, 1023 (S.D.N.Y. 1993), MW argues that any ADA claims arising out of the refusal to rehire should be dismissed. *See* Dkt. No. 37-4 at 5-6.

It is, however, well-established law in the Second Circuit that courts take a "flexible stance" in interpreting these procedural requirements. *See Egelston v. State Univ. College at Geneseo*, 535 F.2d 752, 754-55 (2d Cir. 1976). As a result of this "flexible stance," the Second Circuit has developed an "identity of interest" exception which allows plaintiffs to bring claims against a defendant in federal court despite having not named that defendant in their administrative charges. *See Johnson v. Palma*, 931 F.2d 203, 209 (2d Cir. 1991) (citing *Eggleston v. Chi. Journeyman Plumbers' Local Union No. 130*, 657 F.2d 890, 905-06 (7th Cir. 1981) ). The identity of interest exception is comprised of the following four factors:

"1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; 2) whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; [and] 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party."

**\*10** *Id.* at 209-10 (quoting *Glus v. G.C. Murphy Co.*, 562 F.2d 880, 888 (3d Cir. 1977) ) ("*Glus I*" ). These four considerations are factors, not elements, and "no one factor is dispositive." *Husnay v. Enviromaster Int'l Corp.*, 275 F. Supp. 2d 265, 267 (N.D.N.Y. 2003) (citation omitted).

When considering the identity of interest exception, "courts are to evaluate each factor in light of the statutory purposes underlying" the ADA. *Dortz v. City of New York*, 904 F. Supp. 127, 143 (S.D.N.Y. 1995) (citing *Glus v. G.C. Murphy Co.*, 629 F.2d 248, 251 (3d Cir. 1980) ("*Glus II*") ). The statutory purpose of eliminating employment discrimination is not the only relevant consideration. Courts should also remember that "[r]equiring a plaintiff to name all defendants in her EEOC charge fulfills two main goals: 1) providing notice to the charged party of the alleged violation; and 2) securing voluntary compliance." *Clarke v. Flushing Manor Care Ctr.*, No. 02 Civ. 3079, 2003 WL 1338663, \*2 (S.D.N.Y. Mar. 18, 2003) (citation omitted). Ultimately, it is the plaintiff who has the burden of proving that the identity of interest exception applies. *See Jackson v. New York City Transit*, No. 05-CV-1763, 2005 WL 2664527, \*2-\*3 (E.D.N.Y. Oct. 17, 2005) (citing *Hill v. Citibank Corp.*, 312 F. Supp. 2d 464, 473-74 (S.D.N.Y. 2004) ). [3]

### *a. Knowledge & Misrepresentation of Identity*

The first *Johnson* factor asks " 'whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint[.]' " *Johnson*, 931 F.2d at 209 (quoting *Glus I*, 562 F.2d at 888). The first factor weighs in favor of finding an "identity of interest" where the plaintiff unintentionally names the wrong party in their EEOC charge due to being unaware of the business's actual corporate identity. *See Cobb v. XSPORT Fitness, Inc.*, No. 09 CV 3553, 2010 WL 1741370, *6 (E.D.N.Y. Apr. 28, 2010) (weighing the first factor in the plaintiff's favor because the "plaintiff likely did not realize that his actual employer had a different corporate name than the name under which it did business and, thus, did not know he had to ascertain a different name for his employer to include on his EEOC charge"). Further, courts will consider whether the plaintiff could have ascertained the unnamed party's involvement through available documents, such as paychecks or a notification of a change in ownership. *See Senecal v. B.G. Lenders Serv. LLC*, 976 F. Supp. 2d 199, 219-20 (N.D.N.Y. 2013); *see also Carcasole–Lacal v. Am. Airlines, Inc.*, No. CV-02-4359, 2003 WL 21525484, *4 (E.D.N.Y. July 8, 2003).

**\*11** In *Carcasole–Lacal*, 2003 WL 21525484 at *4, the plaintiff brought a discrimination claim against American Airlines. The plaintiff, a former employee of Trans World Airlines ("TWA"), failed to identify American Airlines in her EEOC charge because she was unaware that American Airlines had purchased certain operations, including her division, from TWA during TWA's dissolution. *See id.* at *2. Ruling for the defendant, the court noted that because TWA had notified its employees that American Airlines was acquiring certain assets, the plaintiff had sufficient notice to uncover the identity of her actual employer. *See id.* at *4-*5.

The fourth *Johnson* factor asks "whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party[.]" *Johnson*, 931 F.2d at 210 (quoting *Glus I*, 562 F.2d at 888). This factor does not require an affirmative misrepresentation—passive conduct of failing to disclose the corporate identity of a business will weigh in favor of an identity of interests. *See Cobb*, 2010 WL 1741370 at *6.

Here, Plaintiff and his counsel had no reason to suspect that there had been a change in ownership and MW took no steps to reveal its role as the owner of the Franchise. When Plaintiff was terminated, Guilderland owned the Franchise. As such, any employment documents that he possessed would have been devoid of MW's subsequent involvement with the Franchise. After MW's takeover of the Franchise, they continued to use the same facility with the same employees and management. It is reasonable to infer that as a result of this seamless transition, there was no general notice of the change in ownership to non-employees. Plaintiff's first contact with the Franchise under MW's ownership was when he reapplied for his position in 2017. The Amended Complaint does not allege any facts that suggest MW identified itself as the new owner during this interaction. Finally, when Plaintiff submitted the Second Charge identifying Guilderland as the owner and accusing the Franchise of impermissibly refusing to rehire him, MW did not take any steps to correct Plaintiff's obvious and understandable mistake.

Taken as true, the Amended Complaint suggests that Plaintiff was completely unaware of the change in ownership and MW passively misrepresented their involvement. Similar to *Cobb*, Plaintiff mistakenly named Guilderland in the Second Charge because he had no reason to suspect that the Franchise was owned by MW. Unlike *Carcasole-Lacal*, Plaintiff had no reason to suspect the change of ownership—even MW concedes that Plaintiff "was not aware of the purchase of the [Franchise]" until after he filed the Second Charge. Dkt. No. 37-4 at 7.

The fact that Plaintiff was represented by counsel in the Second Charge does not alter this analysis. The Second Charge identified the Franchise's perceived corporate owner and reasonable efforts by Plaintiff's counsel, such as reviewing Plaintiff's employment documents, would not have suggested a change in ownership. Given that there was no "evidence available to suggest to ... counsel that [MW was] involved," *Olvera-Morales*, 322 F. Supp. 2d at 218, the Amended Complaint does not allege anything to suggest that Plaintiff or his counsel had any reason to further investigate the actual owner. As such, even though Plaintiff was represented by counsel, the first and fourth *Johnson* factors weigh in favor of finding an "identity of interest" between Guilderland and MW.

### b. Similarity of Interests

The second *Johnson* factor requires the Court to determine " 'whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings[.]' " *Johnson*, 931 F.2d at 209-10 (quoting *Glus I*, 562 F.2d at 888). This factor is designed to measure whether "the unnamed party's interests were represented adequately at the administrative proceeding." *Zustovich*, 2009 WL 735062 at *9 (citation omitted).

**\*12** This factor acknowledges that it is not always necessary for an unnamed defendant to be involved in the EEOC's voluntary compliance session because the named defendant, who was present for that session, may have shared interests with the unnamed defendant and represented those interests to the EEOC. *See Johnson*, 931 F.2d at 209-10 (quoting *Glus I*, 562 F.2d at 888). The more closely the named and unnamed defendants share interests, the less likely the unnamed defendant's absence makes litigation inevitable. *See Schade v. Coty, Inc.*, No. 00 CIV 1568, 2001 WL 709258, *5 (S.D.N.Y. June 25, 2001).

Although Guilderland and MW are separate entities, Plaintiff has alleged that Guilderland and MW have common ownership and integrated their activities, labor relations, and management. The common ownership and integrated control are indicative of shared pecuniary interests and common representation. As such, the Court finds that the Amended Complaint plausibly alleges that Guilderland and MW's interests were aligned, which weighs in favor of finding an "identity of interest."

### c. Prejudice

The third *Johnson* factor asks " 'whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party[.]' " *Johnson*, 931 F.2d at 210 (quoting *Glus I*, 562 F.2d at 888). This factor weighs strongly in favor of the plaintiff if the unnamed defendant had actual notice of the EEOC charge. *See Tarr*, 958 F. Supp. at 795 ("The third factor subsumes the underlying issue of notice. Courts have held that a plaintiff's failure

to name or include a party in the agency complaint does not prejudice that party where it had notice of the claims against it and the opportunity to intervene") (citation omitted). This interpretation has been widely adopted by the courts throughout the Circuit. *See Zhao v. State Univ. of N. Y.*, 472 F. Supp. 2d 289, 306 (E.D.N.Y. 2007); *Parker v. City of New York*, No. 04CV2257, 2004 WL 2671634, *3 (E.D.N.Y. Nov. 18, 2004). The third factor weighs in favor of the unnamed defendant when it did not have an opportunity to be present at the EEOC proceedings. *See, e.g.*, *Kearney v. Kessler Family LLC*, No. 11-CV-006016, 2011 WL 2693892, *3-*4 (W.D.N.Y. July 11, 2011); *Manos v. Geissler*, 377 F. Supp. 4 422, 427 (S.D.N.Y. 2005); *Gallagher v. IBEW*, 127 F. Supp. 2d 139, 143-44 (N.D.N.Y. 2000).

According to the Amended Complaint, MW took over operating the Franchise in January 2017. The business address listed on the Second Charge was the Franchise's address and the EEOC sent notices regarding the Second Charge to the Franchise. *See* Dkt. No. 6 at 12-13. MW initially offered to rehire Plaintiff in February 2017, which suggests that MW was aware of the First Charge and working to ameliorate it. Further, the Amended Complaint alleges that Guilderland and MW had shared ownership and management. As such, knowledge of any EEOC communications directed towards Guilderland would also have been known by the management of MW, meaning that MW would have had notice of the Second Charge but chose not to intervene. Thus, the third factor weighs in favor of finding an identity of interest.

### d. Weighing the Factors

Because all four factors weigh in favor of finding that MW and Guilderland share an "identity of interest," the Court need not weigh the factors against each other and concludes that the Court does have subject matter jurisdiction. Therefore, the Court denies MW's motion to dismiss the claims against it arising from the failure to rehire.

### D. Individual Liability of Defendant DeLeon

**\*13** Defendants argue that Defendant DeLeon is not liable for any ADA violations because individuals cannot be personally liable under the ADA. *See* Dkt. No. 22-4 at 10. Because the Amended Complaint does not assert an

ADA claim against Defendant DeLeon, the Court denies this aspect of Defendants' motion.

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

### IV. CONCLUSION

**IT IS SO ORDERED.**

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**All Citations**

Slip Copy, 2018 WL 2077884, 2018 Wage & Hour Cas.2d (BNA) 155,918, 2018 A.D. Cases 155,918

**ORDERS** that Defendants' motions to dismiss (Dkt. No. 22 and Dkt. No. 37) are **GRANTED in part and DENIED in part**;[4] and the Court further

## Footnotes

1    There is some uncertainty as to whether a court should apply the state common law successor liability test or the broader substantial continuity test. *See New York v. Nat'l Servs. Indus., Inc.*, 352 F.3d 682, 686 (2d Cir. 2006). The parties have each addressed both the common law successor liability test and the broader substantial continuity test.

The Second Circuit, however, has stated that "[w]ithin federal law, the substantial continuity doctrine is well established in the area of labor law." *Nat'l Servs. Indus., Inc.*, 352 F.3d at 686. Further, the courts that have confronted this issue have generally adopted the same analysis that they use for determining successor liability in other employment contexts. *See Sullivan v. Dollar Tree Stores, Inc.*, 623 F.3d 770, 782-83 (9th Cir. 2010) (collecting cases). As such, the Court declines to apply the common law successor liability test in this case. *See Rios v. Core Facility Servs. LLC*, No. 16CV1748, 2018 WL 1545684, *10 (E.D.N.Y. Mar. 29, 2018); *see also Bautista v. Beyond Thai Kitchen, Inc.*, No. 14 CIV. 4335, 2015 WL 5459737, *3 (S.D.N.Y. Sept. 17, 2015) (applying the substantial continuity test to a Fair Labor Standards Act claim despite recognizing that "[t]he Second Circuit has yet to address whether the substantial continuity test applies in the FLSA context").

2    "[T]here is no administrative prerequisite to filing an FMLA claim; the FMLA does not require an exhaustion of administrative remedies prior to initiation of a lawsuit under its provisions." *Manos v. Geissler*, 377 F. Supp. 2d 422, 427 (S.D.N.Y. 2005) (citing 29 U.S.C. § 2617(a)(2); *Breedlove v. Cabou*, 296 F. Supp. 2d 253, 275-76 (N.D.N.Y. 2003) ).

3    Although not raised by the parties, some district courts in the Second Circuit have held that parties represented by counsel before the EEOC or equivalent state agency are not permitted to take advantage of the identity of interest exception. *See Anderson v. Derby Bd. of Educ.*, 718 F. Supp. 2d 258, 275 (D. Conn. 2010) (holding that *pro se* status at the administrative stage is required before applying the "identity of interest" exception). Other courts, however, have either entirely disavowed such a requirement or have simply treated representation by counsel at the administrative stage as another factor to consider in deciding whether the exception should apply. *See Senecal v. B.G. Lenders Serv. LLC*, 976 F. Supp. 2d 199, 214-15 (N.D.N.Y. 2013) (discussing the various ways district courts have applied the identity of interest exception when a party is represented by counsel at the administrative stage). In the absence of Second Circuit authority imposing *pro se* status as a threshold requirement, this Court declines to do so. Rather, the Court finds that a plaintiff's legal representation at the time he or she filed a complaint with the EEOC is simply a relevant consideration in evaluating the first and fourth *Johnson* factors. *See Senecal*, 976 F. Supp. 2d at 216 (citation omitted); *see also Manzi v. DiCarlo*, 62 F. Supp. 2d 780, 787-88 (E.D.N.Y. 1999) (citations omitted).

4    Defendants' motions to dismiss are granted as to the FMLA interference claim against all Defendants and the refusal to rehire claim asserted against Defendant Guilderland.

**WESTLAW**    © 2019 Thomson Reuters. No claim to original U.S. Government Works.                    11

Webb v. Bermudez, Not Reported in F.Supp. (1996)

1996 WL 599673

1996 WL 599673
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Michael WEBB, Plaintiff,

v.

Albert BERMUDEZ, David P. Stansfield,
and Arthur M. Stamp Defendants.

No. 92 CIV. 7305 LAKRLE.
|
Oct. 17, 1996.

OPINION AND ORDER

ELLIS, United States Magistrate Judge:

**\*1** This civil rights action is brought *pro se* by a prisoner against several corrections officers. On April 25, 1996, the defendants moved pursuant to Rule 37(b)(2)(C) of the Federal Rules of Civil Procedure to dismiss.

I. BACKGROUND

Plaintiff Michael Webb, a prisoner in a state correctional facility, brought this action under 42 U.S.C. § 1983 alleging civil rights violations by defendants. Defendants, correctional officers who allegedly beat Webb while he was incarcerated, moved for Rule 37 dismissal after an assistant attorney general attempted to depose Webb on December 13, 1995. Webb allegedly refused to answer questions despite a court order.

Webb began the deposition by refusing to answer any questions but did begin to cooperate after Assistant Attorney General Dell advised him that she would call the court to get a ruling on how to proceed. (Dell Aff. ¶ 7). Webb then answered more than 140 questions. (Webb Dep. at 8–28). When Dell asked questions about the crime for which he is currently incarcerated, Webb again refused to answer, stating "What's the point? It's right there in your face. Read it, dictate it to him later.... I don't want to hear. I done went through it. I got 20 years for it." (Webb Dep. at 28–33). Dell states that Webb then threatened her by saying, "You must be wearing your life on your sleeve. I am telling you that you are definitely pushing it." (Dell

Aff. ¶ 9). Plaintiff then answered another 177 questions before refusing again to answer any more. (Webb Dep. at 35–61). Dell then advised Webb that she would call the court to seek guidance on how to proceed. (Dell Aff. ¶ 14).

Dell states that, after speaking with the court and obtaining a verbal order directing Webb to proceed with the deposition, she and the court reporter relayed the order to Webb. (Dell Aff. ¶ 15–17). Dell says that Webb refused to continue with the deposition because it was not signed by the court. (Dell Aff. ¶ 18). Webb stated "All I know is you two put all this [the order] together, for all I know," and "When I see his signature, then I will honor it." (Webb Dep. at 67–68). Dell states that Webb called the order "a bunch of crap." (Dell Aff. ¶ 18).

Defendants argue that dismissal is the appropriate Rule 37 sanction when a party wilfully fails to obey an order to provide discovery, even if the litigant is *pro se.* Plaintiff argues that (1) dismissal would be drastic and his conduct did not constitute an extreme enough circumstance to warrant dismissal; (2) his behavior did not show bad faith or a callous disregard of an obligation under the Rules of Civil Procedure; (3) the court did not order the plaintiff to answer the specific questions posed; and (4) that the oral order was improperly issued through an *ex parte* communication with the court.

III. DISCUSSION

Rule 37 sanctions, including dismissal, are available if a party or deponent fails to obey a court order regarding discovery. [1] The sanction of dismissal, however, is "a drastic penalty which should be imposed only in extreme circumstances." *Israel Aircraft Indus., Ltd. v. Standard Precision,* 559 F.2d 203, 208 (2d Cir.1977) Rule 37 dismissal is justified only when there is "bad faith" on the part of the party refusing discovery. *Salahuddin v. Harris,* 782 F.2d 1127, 1132 (2d Cir.1986) (quoting *Societe Internationale Pour Participations Ind. v. Rogers,* 357 U.S. 197, 212, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958)). Further, dismissal against *pro se* litigants should be granted only when they deliberately frustrate the process, not when they do so through a misunderstanding. *Id.*

**\*2** Webb's conduct during the deposition does not amount to bad faith and does not require dismissal. Webb had already answered over 300 questions during

Webb v. Bermudez, Not Reported in F.Supp. (1996)

1996 WL 599673

the deposition before refusing to continue. His reluctance to answer certain questions about the crime for which he is currently incarcerated was based on an erroneous, but good faith, view of the law. He mistakenly thought that the questions asked were either irrelevant or unnecessary, telling the defendant's counsel that information about that crime was "[r]ight there in front of your face. Read it[.]" He mistakenly doubted the authenticity of the oral order since he was not present when the order was issued, but said he would comply with the order and answer the questions asked once the order was authenticated.

*Pro se* parties must comply with court orders. *McDonald v. Head Criminal Court Supervisor Officer,* 850 F.2d 121, 124 (2d Cir.1988). If they willfully flout that obligation, they must suffer the consequences of their actions. *Id.* In *McDonald,* a *pro se* plaintiff had filed civil rights claims against several court officers. *Id.* at 122. During discovery, an assistant attorney general attempted to depose him but McDonald refused, requesting the presence of an attorney. *Id.* Based on McDonald's refusal to go forward with the deposition, the defendants moved for dismissal. *Id.* at 123. The court reasoned that McDonald's refusal was not so egregious as to justify a dismissal in light of his request for a postponement and for appointment of counsel. *Id.* The court later issued an order stating that McDonald must go forward with the deposition without an attorney. *Id.* This time, he cooperated for a few hours, then refused to answer any more questions. *Id.* When the defendants called for dismissal under Rule 37, the motion was granted and the order affirmed on appeal because of McDonald's behavior during this second deposition.

Webb's actions in the present case are more similar to the first aborted attempt to depose the plaintiff in *McDonald* rather than the second uncompleted deposition. Webb cooperated for the most part and refused to continue because he doubted the authenticity of the oral order. He stated he would comply with the order once he saw a judge's signature on it. Similarly, McDonald's initial refusal to proceed with the deposition was excused because he stated he was willing to proceed after a postponement and with appointed counsel.

In the present case, Webb's actions were not "so egregious" to justify a dismissal in light of his willingness to proceed once he had a written document with a judge's signature ordering him to answer the questions asked.

## IV. CONCLUSION

For the reasons stated, defendant's Rule 37 motion to dismiss should be DENIED. The plaintiff is ORDERED to make himself available for a deposition within thirty (30) days of the entry of this order and is FURTHER ORDERED to answer all non-privileged questions asked at such deposition by the assistant attorney general posing such questions.

SO ORDERED.

**All Citations**

Not Reported in F.Supp., 1996 WL 599673

---

Footnotes

1    Fed.R.Civ.Pro.Rule 37(b) provides in relevant parts:

    If a party or an officer, director, or managing agent of a party or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a party fails to obey an order to provide or permit discovery ... the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

    ... (C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any party thereof, or rendering a judgement by default against the disobedient party[.]

---

**End of Document**                                         © 2019 Thomson Reuters. No claim to original U.S. Government Works.